The next case on for argument today is United States v. Covington, No. 18-2187. May it please the Court, good afternoon, my name is Donna Newman, I represent Terry Covington. We are here today to ask the Court to vacate his sentence or in the alternative to vacate his conviction. I think it is very clear from a review of the record in the totality that the district court abused its discretion in admitting the expert witness testimony of investigator Timothy Diamond. We say this so assertively because, in fact, that testimony of Mr. Diamond was used to really bolster the only fact witness that was presented, which was Juan Montero, who was a cooperating witness. We recognize, of course, that all cooperating witnesses come with baggage. But in this case, Mr. Montero's baggage was excessive. How do you distinguish this from the cases? We've said repeatedly that testimony of this sort, expert testimony regarding the use of drug language and coded language and references to quantities and so on, is a proper subject of expert testimony as beyond the can of the ordinary juror. How is this different from those cases? Because, in fact, Your Honor, we don't disagree. We understand that. It is not we're arguing that if you take each piece of his testimony in isolation, what we are really saying is the extent and the scope. Because, in fact, it was used to bolster. And I think that the argument is best supported if we look at the government's summation, which relied on the testimony of Mr. Diamond. For example — I'm sorry. You say you are concerned with the extent and scope. So you're not challenging that it was appropriate to admit some of the testimony, but you're saying it should have been limited, its application or references to it? Yes, Your Honor. Is that right? Exactly. And it was abuse of discretion not to do so. Exactly. For example, if we look at the summation and what they relied on, in this summation I'm looking at A361, but it's throughout. In fact, if you really look, there were 17 references in the government's summation to the testimony of the expert. And what they say throughout, scattered, is things of this nature. You know they're discussing heroin — I'm on A361, by the way — because what they're really saying is, Diamond, explain that. So at this point, going up above that, you know without a doubt that the defendant and Montero were discussing heroin. In other words, it's because Diamond told you that, you could rely on that. But this was not objected to at trial, right? That's correct, because that's why we're on plain error. Absolutely. But the fact of the matter is not that in general. In other words, the testimony of an expert would not have been objected — something that could be objected to pre-trial, right? And it was the — really that the scope and the — some of the testimony that he did give. As a human, you keep saying some of the — every — I think every category that — of his testimony is something that we've approved in prior cases. I don't think there's anything that he testified about that is outside of what we have said, is outside — as was noted, was outside the ken of a jury. The things that we have said you can't do, he did none of those things. He didn't say, it's my opinion that this was really heroin and not marijuana. He didn't do that. And in fact, he said the opposite. I haven't reviewed anything related to this case, right? He hadn't reviewed a single thing related to the case. So he didn't opine as to the guilt of the defendant. He talked about codes and slangs and how heroin is processed versus marijuana. All things that we've said jurors don't understand. Well, Your Honor, but you also have indicated that where in fact that testimony is used, in addition to bolstering, it is not appropriate. And I'm going to show you another example. When you say bolstering, the government will call it corroboration. I mean, the whole purpose of putting these witnesses on is to corroborate the other witnesses. It's not impermissible bolstering unless they cross that line. And the government had a long list in their brief of things that he testified about that Montero didn't testify about. Montero wasn't aware of all the various stages of how heroin is made. And that was an important fact, because the intercepts talked about, you know, things that would be relevant to heroin that would never be for marijuana. So they needed to get that expert to explain that, because Montero didn't know anything about all those steps. I think that if we look at Montero's testimony, you will find that in fact they, and I said this in the brief, they actually used Montero to some extent as an expert, because he talked about not only what he did, but he began to also explain at their questioning generalizations about various narcotics trafficking. But I would like to make this very important point. Again, the government goes back and relies on Montero to say that you know that Montero is telling you the truth. You know constantly they rely on that. There is no question in the message that defendant was talking about quantities and prices of heroin. Why? Because right before that they spoke about what the expert said. Going again on page 381, not only that, in this summation, but investigated demons testimony corroborated Montero's explanation of these text messages. So in other words, they are using the expert as not just simply to educate. That's different. Let me tell you about heroin, what it looks like. They're saying that you know he, Montero, is telling the truth. And I suggest very strongly they had a very difficult case with Montero. Let me ask you, the government points out that on cross-examination, Mr. Covington's counsel elicited helpful testimony to him from Mr. Diamond regarding variations in quality and type of marijuana, methods of ingesting, common slang, consignment basis, financial records and so on, maintenance of records and so on used him in an affirmative way. Why, coupling that with the failure to object at any time, why doesn't that constitute a waiver? It's certainly not a waiver. The waiver cases, Your Honor, consist of where we, with the defense, invite some fact or some testimony, invites it, which is quite different than on cross-examination. For example, in the cases that they cite, I think one was a capital case in which the defense attorney said you can either ask for death or life, and then when he got a life sentence, he complained about the life sentence. He asked for the life sentence. This is quite different, Your Honor. There was a very little, in fact, the defense was not that this was impossible. It was Montero is a liar. And in fact, that's what it was. If I may get to a moment about sentencing. You have three minutes of rebuttal. You could use some of that time now if you wanted to and reduce your rebuttal, or you can come back at rebuttal and make your additional points. What would you like? I will, about sentencing, I'm going to come back. All right. Very good. Okay? If that's okay with the Court. We'll hear from the government. Thank you very much. Thank you. May it please the Court, my name is Jillian Grossman, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal, and I represented the United States at trial. Covington's conviction in the sentence imposed by the district court should be affirmed. As an initial matter, the defendant waived any claim of error with respect to expert testimony by making a deliberate tactical decision not to raise any objection to the expert testimony before or during trial and to use the expert in pursuit of the defense that Covington had not supplied Montero with crack and heroin for resale. How can you say it was a deliberate choice? I mean, he just was silent. If he failed to object, why aren't we just on plain error review? Your Honor, here the volume of unchallenged expert testimony combined with the failure to object and the defendant's conduct on voir dire cross-examination and insummation make clear that the failure to object was not an oversight. It was a conscious tactical decision. In voir dire, the defendant elicited Investigator Diamond's expertise in how drug dealers interact with each other, and he explicitly elicited that Investigator Diamond had extensive experience in how drug dealers interact with each other and in their record-keeping practices. He then returned to those topics on cross-examination as well as a number of other topics, which he then invoked in summation to pursue the defense that Montero had not been in a consignment relationship with Covington and that Covington had not been supplying the defendant with crack and heroin for resale. So the court can infer from the record here that it was not simply an oversight. The defendant actually wanted this testimony to come in because the defendant thought that it could be helpful to the defense and used it as such. If this Court does reach the merits, it should affirm, because the district court did not commit any abuse of discretion, let alone plain error in admitting the expert testimony here. The testimony was admitted for an entirely proper purpose, which was to help the jury understand the communications and evidence. Any limited overlap with Montero's testimony was entirely proper, and there was no improper bolstering whatsoever. At no point in Investigator Diamond's testimony did he give an account of a typical drug transaction or narrate a sequence of events that mapped onto Covington's conduct or that mirrored Montero's version of events. And to the extent that Investigator Diamond did corroborate Montero, that was entirely proper in light of the defense strategy of discrediting Montero's testimony as improbable or ambiguous evidence of criminal conduct. With respect to sentencing, the district court did not commit plain error in admitting the expert testimony here. In terms of sentencing, there's one thing that I had to think about a little bit that Ms. Newman pointed to in her paper. She didn't mention it today, but there was one question that related to using different codes, hiding the codes essentially because of higher penalties. And there was expert testimony where he said, I think on one instance, he was aware of that. And the question is, doesn't that come close, dangerously close, to an expert trying to essentially mirror his testimony to suggest that this is what happened here? No, Your Honor, for several reasons. First of all, the government went out of its way to establish that Investigator Diamond was not narrating the defendant's alleged crime, that he had no knowledge whatsoever of the defendant or the facts of the case. Second of all, Investigator Diamond's testimony falls within the heartland of topics that this court has held are outside the can of the average juror, namely techniques of using different types of code, and in this case, different degrees of code, to conceal or camouflage discussions of narcotics trafficking. And most importantly, under this court's decisions in Cruz, Tapiorites, and Taylor, this court has held that expert testimony, even on non-esoteric subjects, is perfectly permissible, where the defense has sought to discredit a fact witness's version of events as improbable criminal behavior, which is exactly what happened here. The defense argued that it was implausible that he and Montero had been using a marijuana code because Montero didn't use that code with his other suppliers or customers, and because they weren't having conversations about crack or heroin. They were, in fact, discussing marijuana. With respect to sentencing, the district court did not commit procedural error, let alone plain procedural error, in its application of the guidelines. At no point whatsoever did the district court express a policy disagreement with the crack cocaine guidelines or any concerns about the disparate treatment of crack and powder cocaine in the guidelines. The district court did muse out loud about the opacity, opaqueness of the ratios, right, the crack and powder to marijuana ratios, and said he had no idea where these came from. Does that express some kind of discomfort, at least, with the table? Your Honor, the comments you've just described were directed towards the lack of transparency, not the underlying policy. So the district court didn't express a disagreement. In fact, it didn't even mention powder cocaine at any point with the guidelines. But it did lament, as Your Honor pointed out, the opacity of that ratio, particularly vis-a-vis members of the public. But that's a different matter than actually disagreeing with the rationale. It was the rate, the opaqueness of how you get from crack to marijuana not having nothing to do with powder, right? It had nothing, he didn't mention powder versus crack at all, right? Exactly, Your Honor. There was zero mention of powder cocaine in sentencing or the disparate treatment therein. In addition, the record does not indicate that Judge Borsetti failed to apprehend his authority to impose a below-guideline sentence under Kimbrough based on a policy disagreement. This defendant was sentenced more than a decade after Kimbrough. And as this Court has repeatedly said, sentencing courts are presumed to know and follow the state of sentencing law. Judge Borsetti recognized his obligation, of course, to calculate the applicable guidelines range, but he never suggested he was bound by it. Unless the Court has further questions, the government will rest on its submission. Thank you. Ms. Newman, you have three minutes. Thank you very much. To answer the question about the hypothetical that with respect to marijuana being used because it would be a lesser sentence if it was overheard, that goes very, very close to the line. I was concerned about that. I looked it up in his testimony, and he gave the example of a case we had where a joint was a gun. So he didn't even match it up to marijuana. He didn't say, you know, in my experience, people use marijuana to refer to heroin. He gave some example where something was coding the use of a gun or the possession of a gun. So that's hardly mirroring the facts of this case. I think it's close enough, Your Honor. And I think that that- It was one question, and it was unobjected to. That is correct, Your Honor. It was unobjected to, but nonetheless, it was close enough. And in light of the totalities, again, that was my argument, wasn't piecemeal. And it was not- the argument was that Montero was a liar, not that it was implausible. So with respect to that objection, with respect to waiver, it's completely different. But I would like to address sentencing for a moment. The judge Presetti did have concerns because he says, as applied in this case to Kraft, he was saying it was irrational. That was the drug equivalency table that he was talking about. It made no sense and is irrational, is a bad thing. But then, suggesting that he had no choice, he says, I can't really explain it. Again, referring to the DET crack calculation with marijuana. But that is the number in the relevant guidelines section, so it is what it is. Now, I am not saying in other instances that Judge Presetti, as clear from the record, did not understand his authority to vary from the guidelines. But I will say, as applied here, it's clear that he felt that that number is the number upon which he was going to rely for sentencing. And in fact, if you- When he made that comment, he was calculating the guidelines range. So in fact, he's right. When you're calculating the guideline range, you have to calculate the range based upon the manual. It is what it is. But he wasn't talking about the ultimate sentence at that point. At that point, he was saying, what's our guideline range here? So it is what it is. But then, he later said that I don't see any reason whatsoever to impose a sentence below or above the range for that matter. I have plenty of cases where I've done that. So he clearly understood that once he did what he had to do under the guidelines, he could do- he could ignore it. On the other hand, Your Honor, this comment shows an ambiguity as to whether or not he understood that even under the DET, if he disagreed with how that calculation was obtained, he could depart. And I think for those reasons, the case should be remanded. I see that my time is up. So I know that Your Honor likes us to stay to the time. Well, we have a long calendar today. One closing comment. Yeah. Thank you. So with respect to that, I do think that the expert testimony here, because it was so relied upon by the prosecution in this summation, shows, in fact, that across the line, it is not piecemeal but the totality. Thank you very much. Thank you very much. We have the arguments. We'll reserve decision.